IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LINDA VALLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:11CV260–HEH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action challenging the Social Security Administration ("SSA")'s denial of disability ("DIB") benefits to Plaintiff Linda Valley ("Valley"). The matter is presently before the Court on the Report and Recommendation ("R&R") of the U.S. Magistrate Judge concerning the parties' cross-motions for summary judgment and Valley's motion to remand, as well as the Defendant Commissioner of Social Security (the "Commissioner")'s objections thereto. This Court will dispense with oral argument because it would not materially aid in the decisional process.

For the reasons set forth herein, the Commissioner's objections will be overruled and the R&R will be adopted. Accordingly, Valley's motion for summary judgment will be granted; the Commissioner's motion for summary judgment will be denied; and the decision of the Commissioner will be reversed and remanded for further proceedings.

## I. BACKGROUND[1]

Plaintiff Linda Valley previously worked as a telephone operator, receptionist, secretary, and bookkeeper. In 2004, she was diagnosed with Multiple Sclerosis ("MS"). MS is an incurable disease generally characterized by progressive deterioration in walking, muscle-control, vision, speech, and cognitive abilities. Shortly after her diagnosis, Valley relocated from Massachusetts to Virginia to provide assistance to her terminally ill son. She is 62 years old, and is currently unemployed.

In January of 2008, Valley applied for DIB benefits under the Social Security Act ("the Act"). Although she originally alleged disability beginning September 5, 2006, Valley later amended her onset date to January 26, 2007. At the request of both counsel for Valley and the Commissioner, several physicians issued opinions concerning the nature and import of Valley's condition. The SSA denied Valley's claim in the first instance on September 10, 2008, and upon reconsideration on January 15, 2009. Thereafter, Valley filed a written request for a hearing before an administrative law judge ("ALJ").

After conducting a hearing on October 2, 2009, ALJ Drew A. Swank issued an opinion on November 9, 2009 denying Valley's claim. More precisely, the ALJ concluded that Valley suffered from several "severe impairments," including MS, degenerative disc disease, obesity, and depression (R. at 12), but nonetheless maintained the residual functional capacity ("RFC") to perform her past relevant job duties as a telephone operator,

---

[1] The following facts are drawn from the administrative record, which has been filed under seal pursuant to E.D. Va. L. R. 5 and 7(C). In accordance with these Rules, this Court will endeavor to exclude any personal identifiers from its discussion, and will incorporate Valley's medical information only to the extent necessary for proper analysis. The Court will reference the record using the following citation format: (R. at [page number]).

such that she was not "disabled" within the meaning of the Act. (R. at 19.) In reaching his determination, the ALJ afforded little weight to the opinion of Valley's treating physician, neurologist John J. Hennessey IV, M.D., finding it to be inconsistent with the physician's notes and the balance of medical evidence. (R. at 18.) The ALJ also questioned the credibility of Valley's own complaints. (R. at 15.) On February 24, 2011, the Appeals Council denied Valley's application for review, making the ALJ's ruling the final decision of the Commissioner, subject only to judicial review.

On April 21, 2011, Valley filed a Complaint in this Court, contesting the Commissioner's decision under 42 U.S.C. § 405(g).[2] Both parties filed motions for summary judgment, which were referred to the Magistrate Judge for an R&R. Upon review, the Magistrate Judge concluded that substantial evidence existed only through July 2008 to support the ALJ's assessment of Valley's credibility and his assignment of little probative weight to Dr. Hennessey's opinion. In fact, the Magistrate Judge found the evidence as a whole to strongly suggest that, at some point between July 2008 and September 2009, Valley's MS "rose to the level of disabling under the Act." (ECF No. 15 [hereinafter "R&R"] at 27.) The Magistrate Judge further deemed the ALJ's explanation of its weight

---

[2] 42 U.S.C. § 405(g) provides, in pertinent part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides.

At the time she filed suit, Valley was a resident of Chesterfield, Virginia. Venue is therefore proper in this Court.

3

and credibility determinations to be insufficient. In particular, he found that the ALJ's analysis failed to adequately address the deterioration in Valley's physical and mental condition as reflected in Dr. Hennessey's examination notes after mid-2008. Accordingly, the R&R recommended that Valley's case be remanded to the Commissioner for a more fulsome consideration of an effective disability onset date.

The Commissioner has objected to the R&R on several grounds. First, he contends that the R&R improperly rests on "a preconceived assumption about the deteriorating nature of MS," rather than an objective inquiry as to "how the impairment affects the claimant's ability to work." (Def.'s Obj. 2.) Relatedly, the Commissioner argues that the examinations by Dr. Hennessey, when considered in the context of "the overall evidence of record," do not undermine the ALJ's conclusion that Valley was not disabled at any point before or after July 2008. (*Id.* at 5.) And finally, the Commissioner maintains that, "even if the ALJ's analysis is not clear," reversal is improper; rather, "the appropriate remedy is to remand for further explanation and evaluation." (*Id.* at 6-7.) The matter is now ripe for disposition.

## II. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Magistrate Judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommended disposition. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3)

"Determination of eligibility for social security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005). At the first step, the claimant must demonstrate that she

4

is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that she has "a severe impairment . . . or combination of impairments which significantly limit[] [her] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). At the third step, if the impairment matches or equals one of the impairments listed in the Act, and the impairment lasts—or is expected to last—for at least twelve months, then it constitutes a qualifying impairment and the analysis ends. *Id.* § 404.1520(d); *see* 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of those listed, then the ALJ must compare the claimant's RFC[3] with the "physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If such work can be performed, then benefits will be denied. Finally, if the claimant cannot perform past work, then the burden shifts to the Commissioner to show that the claimant is capable of performing other work that is available in significant numbers in the national economy. *Id.* § 404.1520(g)(1).

When reviewing a denial of benefits by the Commissioner pursuant to 42 U.S.C. § 405(g), this Court must accept the Commissioner's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard. *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006); *see also Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (clarifying that the question is not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence). A finding

---

[3] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities on a 'regular and continuing basis.' A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must describe the maximum amount of work-related activity the claimant can perform—in an ordinary work setting on a regular and continuing basis—based on the evidence available on the case record. *Id.*

5

is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 at 653. In other words, substantial evidence requires more than a scintilla, but less than a preponderance of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).

In determining whether substantial evidence exists, the Court must consider the record as a whole. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). The Court may not, however, weigh conflicting evidence, evaluate the credibility of evidence, or substitute its own judgment. *Mastro*, 270 F.3d at 176. Thus, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Johnson*, 434 F.3d at 653. At the same time, the Court "must not abdicate [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974) (citations omitted). If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### III. ANALYSIS

#### A. Whether the ALJ's Decision was Supported by Substantial Evidence

Turning to the Commissioner's principal objection, this Court must determine whether the Magistrate Judge erred by finding the ALJ's decision of non-disability to be unsupported by substantial evidence in the record after July 2008. The Commissioner argues that the ALJ properly attached little weight to the testimony of Valley's treating neurologist, Dr. Hennessey, as well as Valley's own complaints. And the rest of the

evidence, in the Commissioner's view, is sufficient to support the ALJ's conclusion. In response, Valley contends that Dr. Hennessey's opinion warranted particular attention, and that, viewed against the totality of the record, it clearly undermines the ALJ's determination that Valley was not disabled at any point after July 2008. She also asserts that the medical record in evidence supported her allegations of pain, weakness, and gait difficulty. Having carefully reviewed the ALJ's analysis, Valley's medical records, and the recommendation of the Magistrate Judge, this Court agrees with Valley.

### 1. *The ALJ's Decision to Discount the Opinion of John J. Hennessey IV, M.D.*

In March of 2007, Valley's primary care physician referred her to Dr. Hennessey, a specialist in neurology, after observing the onset of a right foot drop, which the physician believed to be related to Valley's MS. (R. at 359-62.) After an initial examination, Dr. Hennessey diagnosed Valley with demyelinating disease—that is, disease involving the "destruction, removal, or loss of the myelin sheath of a nerve or nerves," such as MS. *Dorland's Illustrated Medical Dictionary* 486 (32d ed. 2011). Although he expressed concern "with the tempo, or pace, of her disease," Dr. Hennessey described Valley as "doing reasonably well." (R. at 416-18.) Further examination in April 2007 confirmed that Valley "had established business with MS," and revealed that her condition was gradually declining, "as demonstrated by ... enhancing lesions in the bioccipital lobes." (R. at 413.)

In May 2007, Valley began to undergo immunotherapy, to which she responded favorably. (R. at 406, 411.) Dr. Hennessey prescribed additional treatment in the following year, including Betaseron, coenzyme Q-10, steroids, tizanidine, Vitamin D, and increased exercise, all of which seemed to somewhat steady Valley's symptoms. In March and June

7

of 2008, Dr. Hennessey confirmed his impression that Valley suffered from "[r]elapsing remitting multiple sclerosis," and, "given the momentum of [Valley's] disease and the fact that her white matter changes [were] progressing despite the use of the highest dosed interferon," recommended that Valley seek an "academic opinion." (R. at 404, 405, 408.)

A May 2008 MRI indicated further progression in the MS despite Valley's ongoing compliance with treatment, and an onset of "cervical degenerative disease" in her spine. (R. at 390-91.) Symptomatically, however, Valley informed Dr. Hennessey that she "ha[d] not noticed that much in the way of weakness." (R. at 391.) In fact, notes from a July 2008 examination indicated that Valley was walking "much more carefree and with less stiffness than" during the prior visit—even without a cane or touch contact. (R. at 391-92.) Dr. Hennessey noted that Valley was responding favorably to steroid treatment, as evidenced by her improved balance and morale. (*Id.*)

Dr. Hennessey's records reflect an acceleration in the severity of Valley's MS beginning shortly after the July 2008 visit. In treatment notes from March 2009, Dr. Hennessey observed "extreme spasticity" on Valley's right side, as well as a cautious gait, "some stiffness," "very subtle limping on the right foot," and a "hesitant [right] leg with regard to weakness." (R. at 483-84.) He further noted moderate sensory dullness with regard to touch, temperature and vibration. Still, Valley demonstrated good upper mobility and appeared to be "upbeat" and "alert" during the examination. (R. at 484.)

Dr. Hennessey once again examined Valley in September 2009. Although observing her continued positive reaction to Betaseron therapy, Dr. Hennessey noted continued problems with Valley's gait, "especially as it applie[d] to fatigue and breakthrough

weakness in the [left] leg." (R. at 479.) Cerebellar testing revealed slow responses on the right side of Valley's body, and worsening fine motor skills in her extremities. The examination also indicated "dulled" sensitivity below the chin in all four extremities, as well as "circumduction limping step-to-step" in Valley's gait. (R. at 479-80.) Additionally, whereas Valley had been able to walk unassisted around the time of the July 2008 visit, notes from the September 2009 examination indicate Valley's "consistent" use of straight cane "for balance" while outside of the home, and occasional use in her home. (R. at 480.) Finally, based on the results of Valley's recent academic examination, Dr. Hennessey opined that Valley had likely suffered from MS for approximately thirty years (R. at 479.)

Based upon his examinations over a period of several years, Dr. Hennessey issued two opinion letters to Valley's counsel in 2008 and 2009. First, in a letter dated October 24, 2008, Dr. Hennessey opined that, as a result of her "progress[ing]" MS, Valley suffered from chronic fatigue and weakness throughout the day, had difficulty getting up after bending over, had short-term memory and organizational impairment, and became confused when working under time constraints. (R. at 461.) These symptoms, he predicted, would "worsen[] with time." (*Id.*) And in an updated letter on September 18, 2009, Dr. Hennessey specifically expressed "concerns about [Valley's] ability to perform any type of work including her past work as a receptionist." (R. at 474.) He further reasserted that Valley's MS had become "quite advanced and [was] very likely to continue to progress." (*Id.*) Ultimately, therefore, Dr. Hennessey "endorsed" Valley's pursuit of disability. (R. at 461.)

In determining how much weight to attribute to medical-opinion evidence, an ALJ should assess the following non-exclusive factors:

9

(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

*Johnson*, 434 at 654. Consistent with the foregoing rubric, the ALJ must "accord greater weight" to the testimony of a treating physician than that of a physician who has not examined the claimant. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); *see also* SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996) (stating that medical opinions from treating sources "are entitled to special significance"). Indeed, the opinions of such treating physicians are generally given controlling weight, so long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record.[4] 20 C.F.R. § 404.1527(c)(2).

Conversely, the opinion of a treating physician warrants "significantly less weight" if it "is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Craig*, 76 F.3d at 590; *see also* 20 C.F.R. § 404.1527(c)(4) (explaining that the more consistent an opinion is with the record as a whole, the more weight it deserves). Even in such instances, however, the ALJ cannot disregard the physician's opinion, and, absent "persuasive contrary evidence," *Mastro*, 270 F.3d at 178, should still give it "more weight" than "a nontreating source" would normally receive. 20 C.F.R. § 404.1527(c)(2)(i);

---

[4] This is so because, as applicable regulations explain, these physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).

*see also id.* § 404.1527(c)(2)(ii) ("[T]he more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."). Moreover, if the ALJ elects not to give the treating physician's opinion controlling weight, he must "give good reasons" for doing so. 20 C.F.R. § 404.1527(c)(2).

Here, after acknowledging that the opinion of a treating source "is entitled to controlling weight ... if it is well-supported and not internally inconsistent or inconsistent with other pertinent clinical evidence," ALJ Swank chose to give "little probative weight" to the opinion of Dr. Hennessey. (R. at 18.) Specifically, the ALJ found Dr. Hennessey's opinion, as articulated in the October 2008 letter and later updated in September 2009, to be "inconsistent with Dr. Hennessey's records of treatment." (*Id.*) In support of his evaluation, the ALJ paid particular attention to treatment notes from September 2007, June 2008, and July 2008, which indicated stability, and even improvement, in Valley's condition. (R. at 16.) The ALJ's decision also recounted, but devoted only minimal analysis to, subsequent examinations in March and September 2009 that revealed weakness and diminishing stability in Valley's legs, as well as complications with her gait. (R. at 16-17.) Because ALJ Swank disregarded this latter portion of the record without sufficient explanation for doing so, remand is appropriate.

As an initial matter, this Court does not find Dr. Hennessey's opinions to be internally inconsistent with his treatment record *as a whole*. On the one hand, Dr. Hennessey's observations from March 2007 through July 2008 detail the positive results of Valley's Betaseron and steroid treatments: despite occasional flare-ups, they indicate that the symptoms of Valley's MS were reasonably controlled and did not interfere substantially

with her daily functioning. In fact, Dr. Hennessey remarked in July 2008 that Valley looked "like a different patient with her performance on her feet and her balance" without a cane. (R. at 391.) As the ALJ rightly concluded, these observations contradict to a degree the medical conclusions contained in Dr. Hennessey's opinion letters, and reasonably support the inference that, at least as of the July 2008 visit, Valley was not disabled within the meaning of the Social Security Act.

Treatment notes from March and September 2009, on the other hand, paint a markedly different picture. Consistent with his expectation that Valley's MS symptoms would continue to worsen over time, Dr. Hennessey's medical observations in March and September of 2009 reflect a clear deterioration in Valley's condition as compared to the year prior. Thus, unlike the notes from early in Valley's course of treatment, these later assessments reasonably support—and correspond temporally with—the opinion expressed in Dr. Hennessey's letters. Yet, in rejecting Dr. Hennessey's assessment of Valley's condition, ALJ Swank gave only minimal treatment to the medical notes issued nearly contemporaneously with Dr. Hennessey's opinion letters. Indeed, the ALJ's decision plainly fails to draw any significance from the variance in Dr. Hennessey's prognoses at various points in his two-year patient relationship with Valley. In this Court's view, it was improper for the ALJ to discount *in whole* the opinion of Valley's treating physician based upon only *part* of the physician's records.

Nor does this Court deem Dr. Hennessey's opinion to be at odds with the remainder of the record. Like Dr. Hennessey, Linda M. Dougherty, Ph.D., a licensed clinical psychologist who examined Valley on December 30, 2008, opined that Valley's RFC should

12

have been lower than sedentary. Finding Valley to be "a credible claimant," Dr. Dougherty reported first on the physical symptoms of Valley's MS, including "bowel and bladder problems, right-sided weakness, poor balance, ... muscle spasms in her legs," and chronic fatigue. (R. at 462, 468.) She also diagnosed Valley with Depressive Disorder NOS, and, after conducting various intellectual and memory tests, concluded that Valley possessed average to low-average cognitive abilities, as well as average to superior memory functioning. (R. at 464-68.) And while she opined that Valley could potentially "complete a normal workday based on her mental health status," Dr. Dougherty advised that Valley might need "additional supervision to complete work activities on a consistent basis," as well as in the management of any funds. (R. at 469.) The ALJ purported to attach "significant probative weight" to Dr. Dougherty's psychological opinion.[5] (R. 18-19.)

Relying in large part on Dr. Dougherty's findings, Robert W. Lester, a vocational expert, went even further. After reviewing Valley's medical records and alleged activities of daily living, Mr. Lester opined on September 30, 2009 that Valley was disabled and unable to work in any capacity. (R. at 317.) Given the likelihood that Valley's symptoms would be exacerbated by stress and activity, and the documented impact of her medication regimen on her memory and concentration, he concluded that Valley would require frequent

---

[5] "Generally, the longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by [the] treating source, the more weight [the ALJ] will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(ii). Here, ALJ Swank accorded "significant probative weight" to Dr. Dougherty's psychological opinion because her views reflected first-hand observations. (R. at 18-19.) Yet, as ALJ Swank acknowledged, Dr. Dougherty's opinion was based upon merely "a one-time snapshot of [Valley's] mental status." At the same time, ALJ Swank gave "little" probative value to the medical conclusions of Dr. Hennessey—Valley's treating neurologist of nearly *three years*. Given the overlap between the findings of Drs. Hennessey and Dougherty, the ALJ's decision fails to adequately explain this *inversely* discrepant weighing of the evidence.

rest at any place of employment. He further opined that her condition would force her to be absent from work three to four days per month.

Lastly, although J. Astruc, M.D., who reviewed Valley's medical records at the Commissioner's request, opined in September 2008 that Valley retained "the RFC for sedentary work without any other restriction," such evidence should not, in itself, have negated Dr. Hennessey's opinion. (R. at 422.) Significantly, Dr. Astruc did not personally examine Valley, but based his conclusions only upon the neurological exams conducted by Dr. Hennessey through mid-2008. (*Id.*) As a non-examining source,[6] the weight afforded to Dr. Astruc's findings must depend "upon the level of supporting explanation provided." *Tynes v. Comm'r of Soc. Sec.*, No. 4:10cv146, 2011 WL 6981194, at *9 n.21 (E.D. Va. Dec. 12, 2011). Further, his opinion "cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *see also* 20 C.F.R. § 416.927(c)(1) (explaining that the opinions of non-examining physicians are generally entitled to less weight than those of treating physicians). Yet here, devoid of hardly any analysis, and notwithstanding Dr. Hennessey's contrasting conclusion, the ALJ summarily found Dr. Astruc's opinion to be "consistent with the medical evidence as a whole" and attributed to it "great probative weight." (R. at 18.) Again, this bare assessment reflects inadequate consideration of the medical evidence closest in time to the ALJ's decision.

## 2. *The ALJ's Decision to Deem Valley's Testimony Not Credible*

---

[6] "Findings of fact made by [s]tate agency medical and psychological consultants ... regarding the nature and severity of an individual's impairment(s) must be treated as opinion evidence of nonexamining sources." SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

For these same reasons, the ALJ's rejection of Valley's testimony requires reconsideration. In evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ must determine whether the individual's claims are "supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce" the symptoms alleged. *Craig*, 76 F.3d at 591-92. However, "there need not be objective evidence of the pain itself." *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986) (internal quotation marks and citation omitted). Thus, "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness, and effusion." *Craig*, 76 F.3d at 593.

In this case, Valley testified on several occasions as to her condition. First, in a September 2008 Function Report, she indicated an ability to carry on a variety of daily living activities—albeit at times with her husband's assistance—including eating, bathing, performing light household chores such as washing dishes and dusting, using the computer, communicating by phone, and caring for pets. (R. at 198-99.) In her Pain Questionnaire, Valley rated the aching pain in her lower back and legs between a "four" and an "eight." (R. at 195.) She further represented that she regularly experienced mental and physical limitations as a result of her MS, including problems with memory, concentration, and completing tasks; a reduced ability to cope with stress; and difficulty with balance, standing for prolonged periods, walking on uneven ground, lifting, squatting, bending, or kneeling. (R. at 199-204.) Valley also stated that muscle spasms, stiffness, and pain frequently

15

interfered with her ability to sleep. (R. at 199.) And during occasional "flare ups," Valley claimed that her symptoms would worsen. (R. at 202.)

In November 2008, Valley sent a letter to the Commissioner complaining of "major weakness" and pain in her right hip, leg, and knee. (R. at 60.) She also detailed complications with balance and moving from a sitting to standing position, and indicated an inability to squat, lift, or kneel. In addition, she noted several falls as a result of her imbalance, and stated that, despite her regular use of a cane, she sometimes tripped due to the tendency of her right foot to drag. Based on the "physical and mental changes" in her condition, Valley averred that she could "no longer function in the work place." (R. at 460.)

Finally, Valley testified at the October 2, 2009 hearing before ALJ Swank that she experienced chronic daily pain in her lower back, right hip, and shoulders. (R. at 31-32.) As a consequence, Valley indicated that she could safely lift no more than ten or fifteen pounds, was unable to stand for longer than forty-five minutes, used a cane "[m]ost every day," and struggled to sit for extended periods of time. (R. at 33.) She further informed ALJ Swank that she required at least one hour-long nap each day, describing her fatigue as a "big problem." (R. at 34-35.) Valley also advised him that she had sustained a broken rib after falling in late-2008. Despite these limitations, however, Valley confirmed her ability to perform simple household chores, run errands, and use a telephone and computer. (R. at 35-41.)

Just as ALJ Swank found Dr. Hennessey's opinion to be internally inconsistent and refuted by the medical record, he also discounted Valley's credibility, and attached minimal weight to her complaints. More precisely, he found "that the claimant's medically

16

determinable impairments could reasonably be expected to cause the alleged symptoms," but deemed her "statements concerning the intensity, persistence and limiting effects of these symptoms ... not credible to the extent they are inconsistent with" his assessment of Valley's RFC. (R. at 15.)

In formulating his analysis, ALJ Swank perceived a contradiction between Valley's complaints of debilitation and her self-reported ability to maintain a modest range of daily living activities. Yet the Fourth Circuit has made clear that a claimant should not be denied DIB benefits merely because she is not "totally helpless or bedridden." *Totten v. Califano*, 624 F.2d 10, 11 (4th Cir. 1980) (explaining that such a strict standard would disqualify even an individual with merely "the ability to perform substantial gainful activity ... one day each month or each year"). By summarily finding Valley's complaints incredible based upon her capacity to perform rudimentary day-to-day tasks, the ALJ's analysis swept too broadly. Here, again, the ALJ should have given more particularized consideration to the consistency between Valley's testimony and the objective medical evidence: although Valley's allegations may have been only minimally supported by the record as of 2007 and early-2008, the findings of her treating physician and the examining psychologist in late-2008 and 2009 corroborated her complaints of restricted physical and mental capabilities. Based on the ALJ's partial analysis, this Court cannot conclude that substantial evidence exists in the record to support the ALJ's credibility assessment.

In sum, Because Dr. Hennessey's medical opinion was both well-supported by medically acceptable methodology and not materially inconsistent with other substantial evidence in the record, this Court agrees with the Magistrate Judge that it should have been

17

given significant weight, or at least closer inspection—particularly after July 2008. This Court further agrees that ALJ Swank failed to adequately explain his decision to discount altogether Dr. Hennessey's opinion, and to find Valley's complaint not credible. Indeed, where an ALJ has not "sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Arnold v. Sec. of Health, Ed. & Welfare*, 567 F.2d 258 (4th Cir. 1977); *see also DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ]."). Under the present circumstances, remand is appropriate.

## B. Propriety of Remand with Instructions to Determine Onset After a Date Certain

Alternatively, the Commissioner asserts that even "if the ALJ's analysis is not clear, ... [r]emand, not reversal, is necessary for resolution of an unresolved issue of fact in this case." (Def.'s Obj. at 6.) The Commissioner's objection is misguided. The Fourth Circuit has instructed that where review of the record does not reveal substantial evidence supporting the denial of benefits, the district court "must reverse and remand for further proceedings." *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011); *see also Cook v. Heckler*, 783 F.2d 1168, 117 (4th Cir. 1986) (reversing and remanding where the ALJ's failure to adequately explain his decision made it "simply impossible to tell whether there was substantial evidence to support the determination"). The Court will heed that directive here.

The Commissioner further argues that "[t]he R&R should not be adopted insofar as it recommends reversal for determination of onset of disability after July 2008." (Def.'s Obj.

18

at 7.) To the extent the R&R directs the ALJ to *declare* Valley disabled within the meaning of the Social Security Act after a date certain—namely, July 2008—the Commissioner's objection is well taken. However, this Court construes the recommendation of the Magistrate Judge more narrowly than the Commissioner does, and adopts it as such. (*See* R&R at 31 (recommending remand for "*consideration* of an effective onset date") (emphasis added).) As the R&R does not unduly infringe on the province of the ALJ, the Commissioner's objection will be overruled.

This Court does not endeavor to determine a disability onset date—either actual or constructive. That decision, as the Magistrate Judge properly noted, is best left to the judgment of the ALJ. (*See* R&R at 30 ("Deciding when Plaintiff became disabled ... should be left to the ALJ, not this Court, and requires an explanation by that ALJ as to the substantial evidence that supported the finding.").) On remand, however, the ALJ should give careful consideration to the consistency over time between the entire medical record in evidence and the opinion of Dr. Hennessey, as well as Valley's own testimony, and should explain fully and specifically any decision to discount these important sources in whole or in part.

## IV. CONCLUSION

Based on the foregoing analysis, this Court will adopt the Report and Recommendation of the Magistrate Judge. Accordingly, Valley's motion for summary judgment will be granted, and the Commissioner's motion for summary judgment will be denied. Because it is not supported by substantial evidence, the Commissioner's decision

will be reversed and remanded for further proceedings consistent with this Memorandum Opinion and the R&R.

An appropriate Order will accompany this Memorandum Opinion.

                                         /s/
                            Henry E. Hudson
                            United States District Judge

Date: Aug. 7, 2012
Richmond, VA